47 So.2d 889 (1950)
HALL
v.
HOLLAND.
Supreme Court of Florida, Division A.
October 6, 1950.
*890 Hamilton & Langbein, West Palm Beach, for appellant.
Baxter Goodlett, West Palm Beach, for appellee.
ROBERTS, Justice.
Plaintiff-appellant sued in the court below to recover damages for injuries alleged to have been sustained by reason of defendant-appellee's failure to provide him with a safe place to work. Trial was had upon the issues made by defendant's pleas, and the jury found for the defendant. This appeal is from such verdict and judgment.
The only assignments of error argued on this appeal relate to the court's charge to the jury. Before discussing the errors thus assigned, we will briefly detail the facts of the case, which are as follows: Defendant employed plaintiff to paint a house owned by defendant, the plaintiff's employment status being either that of an independent contractor or an employee. The house was a one-story bungalow with an enclosed porch across the front and having a small wooden structure extending out from the porch over the front steps. This structure, which was variously referred to as a stoop, a porch, a canopy, and a shelter, was at least five feet wide and four and one-half feet deep, and was possibly somewhat larger. It was boxed in, with a peaked, or gabled roof, to match the gable effect of the enclosed front porch.
At the time plaintiff began painting the house, the canopy (as we will hereinafter refer to it) was supported by pilasters at all four corners, two against the porch and two at the outer corners of the canopy. The defendant advised plaintiff not to spend too much time on painting the canopy, as he was planning to replace the two outer posts, which were defective. Accordingly, the plaintiff left unpainted a portion of the wall immediately above the canopy. The defendant then proceeded with the repairs, which consisted of removing the defective outer posts and replacing them with two diagonal "braces" extending from the outer corners of the canopy to the porch wall. The "braces" were either 4x4's or 4x6's, about 5 1/2 feet long, which the defendant had pre-cut at a mill so as to form a 45-degree angle at the corner of the canopy and the porch wall. After the remodeling, the canopy no longer stood on four legs like a table but hung on the wall like a bracketed shelf or balcony. The defendant employed a carpenter to do the actual work of removing the outer posts and inserting the diagonal braces. The defendant had not built the house, and had no actual knowledge of the manner in which the canopy was attached to the wall, nor could the manner of such attachment be ascertained by inspecting merely the outside of the canopy, as the structure was sealed in at the bottom and the roof joinder was concealed by weather-stripping. The defendant had neither architectural nor engineering experience, and did not consult anyone about the advisability of replacing the vertical posts with the diagonal braces. Neither did he obtain a building permit for the alteration, as required by City Ordinance.
The plaintiff, having completed the remainder of the house, undertook to paint the unfinished portion of the wall above the remodelled canopy. He testified that there was no way to paint this portion except by going on top of the canopy. (This was, however, contradicted by the defendant in his testimony.) In so doing, he went up the ladder and, in his own words, "crawled out on this stoop. You had to lay down to paint this place and I laid down and started to move to get some paint on the brush and this stoop broke away from the house." The canopy, or "stoop", fell on him, inflicting *891 severe injuries. The plaintiff had made no special examination of the manner in which the canopy was attached to the wall, testifying that he thought it was perfectly safe as the defendant told him he (the defendant) had been on top of the canopy during the preceding week-end; that he had seen the new braces and thought the carpenter knew how to put it up; that the defendant had told him to go up on the stoop to paint the canopy. The defendant denied this, and also denied that he had been up on the canopy. There is, however, no evidence that defendant warned plaintiff not to go up on the canopy, nor does it appear that defendant informed plaintiff of the fact that the remodeling was done without investigating the method of attachment. After the canopy fell, it appeared that it had been fastened to the wall only by three 16-penny nails; and, presumably because of the type of support afforded by the diagonal braces, this fastening was not sufficient to withstand the additional stress of the plaintiff's 175 pounds.
It is the plaintiff's theory that the defendant was negligent in (1) remodelling the canopy supports without seeking expert advice and without investigating the manner in which the canopy was attached to the porch wall, and (2) failing to obtain a building permit in violation of a City Ordinance which, it is alleged, would have insured a safe construction, as the standards of construction prescribed by ordinance required that "All members shall be so framed, anchored, tied and braced together as to develop the maximum strength and rigidity necessary for the purpose for which they are used." The defendant contends, on the other hand, and so pleaded, that the plaintiff was not lawfully on the canopy at the time of the injury; that defendant had not invited or requested plaintiff to go upon the canopy; that there was no duty on the part of defendant to keep the canopy in a reasonably safe condition to sustain a live load equivalent to the weight of plaintiff; and that the plaintiff's own negligence in going upon the canopy proximately contributed to his injury.
At the outset, it may be stated that the duty of the defendant towards the plaintiff, with respect to the condition of the canopy, would appear to be the same whether the plaintiff was there as the employee of defendant or as an independent contractor. An independent contractor has the status of a business visitor, or invitee, upon the premises. Gowing v. Henry Field Co., 225 Iowa 729, 281 N.W. 281, 284; Dingman v. A.F. Mattock Co., 15 Cal.2d 622, 104 P.2d 26; Reardon v. Exchange Furniture Store, 7 W.W.Harr. 321, 37 Del. 321, 183 A. 330; McLaughlin v. Creamery Package & Mfg. Co., Mo. App., 130 S.W.2d 656; Magnolia Petroleum Co. v. Barnes, 198 Okla. 406, 179 P.2d 132.
Whether plaintiff was an employee-invitee or a business visitor-invitee, it was the duty of the defendant to use reasonable care in maintaining the premises in a reasonably safe condition and to have given the plaintiff timely notice and warning of latent and concealed perils, known to the defendant, or which by the exercise of due care should have been known to him, and which were not known by plaintiff or which, by the exercise of due care, could not have been known to him. Tutwiler v. I. Beverally Nalle, Inc., 152 Fla. 479, 12 So.2d 163; Breeding's Dania Drug Co. v. Runyon, 147 Fla. 123, 2 So.2d 376; Fred Howland, Inc., v. Morris, 143 Fla. 189, 196 So. 472, 128 A.L.R. 1013; Restatement of Torts, Vol. 2, Sec. 343; 38 Am.Jur., Negligence, page 754; 35 Am.Jur., Master and Servant, page 612.
While the invitee is entitled to expect that the owner will take reasonable care to discover the actual condition of the premises and either make them safe or warn him of dangerous conditions, Restatement of Torts, Section 213; 35 Am.Jur., page 612; Haefeli v. Woodrich Engineering Co., 255 N.Y. 442, 175 N.E. 123, 126; Malolepszy v. Central Market, 143 Neb. 356, 9 N.W.2d 474, such owner is entitled to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his own senses, and is not required to give to the invitee notice or *892 warning of an obvious danger. Dingman v. A.F. Mattock Co., 15 Cal.2d 622, 104 P.2d 26. It has also been held that the owner is under no legal duty to alter the premises so as to eliminate known and obvious dangers. Magnolia Petroleum Co. v. Barnes, 198 Okla. 406, 179 P.2d 132.
It is also a rule, applicable here, that the owner or occupant of premises owes the same duty to exercise ordinary care for safety of persons upon his premises whether they are there by express or implied invitation. It is held that there is no practical difference between the one situation and the other, the same duty is due from the owner of the premises to the victim in either case. Texaco Country Club v. Wade, Tex.Civ.App., 163 S.W.2d 219.
The phrase "implied invitation" imports knowledge by the defendant of the probable use by the plaintiff of the defendant's property so situated and conditioned as to be open to, and likely to be subjected to, such use. 38 Am.Jur. page 757. As stated by the Georgia court in Coffer v. Bradshaw, 46 Ga. App. 143, 167 S.E. 119, 123: "The duty to keep the premises safe for invitees extends to all portions of the premises which are included within the invitation and which it is necessary or convenient for the invitee to visit or use in the course of the business for which the invitation was extended, and at which his presence should therefore reasonably be anticipated, or to which he is allowed to go." See also 45 C.J., § 240, page 830; 65 C.J.S., Negligence, § 48; Restatement of Torts, Vol. 2, Sec. 322; Cooley on Torts, 3d Ed., 1259; Brosnan v. Koufman, 294 Mass. 495, 2 N.E.2d 441, 104 A.L.R. 1177; Reardon v. Exchange Furniture Store, 7 W.W.Harr. 321, 37 Del. 321, 183 A. 330; Fred Howland, Inc., v. Morris, 143 Fla. 189, 196 So. 472, 128 A.L.R. 1013.
As we have heretofore indicated, the only errors here assigned relate to the Chancellor's charge to the jury. Let us, then, examine the charges here complained of, in the light of the foregoing rules.
It is first contended that the trial court erred in charging the jury that "If you find that by the exercise of reasonable care in inspecting the building the plaintiff and defendant each had the same knowledge of, or means of knowing, the danger which caused the injury to plaintiff, it will be your duty to find a verdict of not guilty." There would be no objection to such an instruction if we were here dealing with a situation in which the parties were charged with the same degree of responsibility. But we cannot recommend such a charge under the facts in the instant case, in which a latent peril is involved, and where a higher degree of responsibility with respect to such danger rests on the defendant, as owner of the premises. See Restatement of Torts, Vol. 2, Sec. 343(f). Neither can we sustain the contention of defendant that the foregoing charge is not subject to criticism when considered in connection with the charge, previously given at plaintiff's request, that "a business visitor is entitled to expect that the owner will take reasonable care to discover the actual condition of the premises and either make them reasonably safe or warn him of dangerous conditions." Any curative effect of this last-quoted charge is dissipated when considered in connection with a later charge, given at defendant's request, with respect to the "due diligence" required by defendant, and which will be discussed in a subsequent portion of this opinion.
It is next contended that the trial court erred in charging the jury as follows: "If you find that it was not necessary that plaintiff go upon the shed in order to paint the wall above it, but did so merely for his own convenience, and in so doing failed to use due care to determine that the shed was safe for such use, it will be your duty to find a verdict of not guilty." It will be remembered that there was a conflict in the testimony as to whether it was necessary for plaintiff to go up on the canopy in order to paint the wall above it. However, as we have heretofore shown, the fact that it was merely convenient, rather than necessary, to go on that particular portion of the premises will not defeat the plaintiff's recovery if his presence there should reasonably have been anticipated by defendant. If it was the purpose of this charge to present to the jury the issues *893 made by defendant's pleas, that plaintiff was not on the roof "lawfully" nor "pursuant to the defendant's invitation or request," (and it is so indicated in defendant's brief) it can be seen that such charge does not fairly present to the jury these issues. Moreover, even if it was necessary for the plaintiff to go up on the canopy and in so doing he "failed to use due care to determine that the shed was safe for such use," the jury could have found for the defendant. Thus, by interjecting the issue of plaintiff's contributory negligence into the charge, the court abrogated the distinction between "necessary" and "convenient" made in the remaining portion of the charge, so that even if this portion of the charge had been accurate, it would appear that no useful purpose could have been served by the charge as a whole. It should have been refused.
We turn now to the last question presented by plaintiff on this appeal, the charge complained of therein reading as follows: "If you find that the defendant either employed the plaintiff to paint his premises or invited the plaintiff upon the premises to work, in that event, the law imposed upon the defendant the duty of providing the plaintiff with a reasonably safe place to work, and to use ordinary care and diligence to keep the premises in a safe condition. This does not mean that the defendant is the absolute insurer of plaintiff's safety while performing the work; nor does due diligence require defendant to rip and tear his premises apart to determine whether it is possible that one using them in the manner contemplated by the agreement in this case is likely to be injured. The degree of care to be exercised by defendant for the safety of plaintiff is dependent upon the circumstances, and I charge you that if you find the defendant had made a reasonable inspection and failed to find any condition which would lead an ordinary prudent person to anticipate that plaintiff's safety was endangered, then you must bring in a verdict of `not guilty.'" It is the italicized portion of this charge which plaintiff assigns as reversible error, and we must sustain this contention.
It will be noted that the trial court properly charged the jury that "if you find the defendant had made a reasonable inspection and failed to find any condition which would lead an ordinarily prudent person to anticipate that plaintiff's safety was endangered, then you must bring in a verdict of `not guilty.'" However, the court charged the jury further and specifically that due diligence would not require the defendant "to rip and tear his premises apart." This was reversible error. It was contrary to Section 54.17, Florida Statutes, same F.S.A., which prohibits a charge on the facts, see Schwartz et al. v. Priest, 153 Fla. 458, 14 So.2d 845, and it also withdrew from the jury a question which was the very crux of plaintiff's case. As has been heretofore stated, the defendant proceeded to replace the upright posts with angle braces, on his own initiative and without the benefit of expert advice, and also in violation of a city ordinance. It is elementary that weight applied to such an angle brace would result in horizontal stress and strain on the joist supporting the load over the angle brace. Thus, the fact that the joist was fastened to the wall only by three 16-penny nails became, as a result of defendant's remodelling, a "latent or concealed peril;" and, in accordance with the rule previously mentioned, it was the defendant's duty to exercise reasonable care to discover this condition and either make it safe, or warn plaintiff of the danger. In determining whether defendant exercised such reasonable care, it was proper  and, indeed, necessary  for the jury to consider whether defendant was required "to rip and tear" into the structure, since the uncontradicted evidence was that the canopy was so constructed that it was impossible to discover how the joist was fastened to the wall merely by inspecting the outside of the structure. However, by the charge here complained of, the trial court in effect charged that an inspection of the exterior of the structure was all that was required of defendant, in the exercise of reasonable care. If defendant's duty was limited to an inspection of the outside of the structure, then his liability extended *894 only to dangers which could have been as readily apparent to plaintiff as to defendant. And, under the rule that an owner is entitled to expect that an invitee will observe and avoid an obvious danger, it is clear that the jury could only have found for the defendant under the charge now under consideration. This is especially true in view of the fact that the court had previously charged that if the plaintiff and defendant "each had the same knowledge of, or means of knowing, the danger which caused the injury to plaintiff, it will be your duty to find a verdict of not guilty." It was, therefore, error to charge that the defendant was not required "to rip and tear his premises apart," and, as has been shown, it was not harmless error.
We will not unduly prolong this opinion by discussing the other charges here complained of, since the errors contained therein will be readily apparent to counsel and the trial court in the light of what has been said before, and a further discussion would be mere reiteration.
For the reasons stated, the judgment is reversed and the cause remanded for further proceedings consistent herewith.
Reversed and remanded.
ADAMS, C.J., and TERRELL and THOMAS, JJ., concur.